Filed 6/2/21  P. v. Medina CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073163 |
| v. | (Super.Ct.No. FSB1301112) |
| NOE RODRIGUEZ MEDINA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steve Malone, Judge.  Reversed.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Collette Cavalier and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant Noe Rodriguez Medina appeals from a postjudgment order denying his motion under Penal Code section 1473.7 to vacate his 2011 convictions for possession for sale of marijuana (Health & Saf. Code, § 11359) and being a felon in possession of a firearm (Pen. Code,[1] former § 12021, subd. (a)(1)). Defendant contends the motion should have been granted on the grounds that his trial attorney provided ineffective assistance of counsel by failing to advise him of the immigration consequences of his plea, as well as his own error in not understanding the consequences of his plea. We conclude that defendant established prejudicial error under Penal Code section 1473.7. Thus, we reverse the trial court's order denying his Penal Code section 1473.7 motion.

PROCEDURAL BACKGROUND

In 2010, the Riverside County District Attorney filed a felony complaint charging defendant with possession for sale of marijuana (Health & Saf. Code, § 11359, count 1), cultivating marijuana (Health & Saf. Code, § 11358, count 2), unlawful possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a), count 3), possession of a firearm by a felon (Pen. Code, former § 12021, subd. (a)(1), count 4), and possession of ammunition by a felon (Pen. Code, former § 12316, subd. (b)(1), count 5).

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

On April 12, 2011, defendant pled guilty to counts 1 and 4. In exchange, a trial court placed him on probation for three years, which included 180 days in county jail. The court dismissed the remaining charges pursuant to the plea agreement.

On December 20, 2018, the United States Department of Homeland Security initiated removal proceedings and issued a warrant for defendant's arrest.

On January 24, 2019, defendant filed a petition under Health and Safety Code section 11361.8 to reduce count 1 to a misdemeanor, which the court granted.

On May 1, 2019, an immigration judge entered an order of removal against defendant.

On June 3, 2019, defendant filed a motion to vacate his convictions on counts 1 and 4 under section 1473.7. He claimed that his counsel was ineffective because he failed to warn him of the risks of adverse immigration consequences of pleading guilty and did not attempt to negotiate an immigration-safe disposition. He further argued that, even if his counsel's representation did not rise to the level of ineffective assistance of counsel (IAC), his performance resulted in defendant's failure to meaningfully understand the consequences of his plea.

In support of his motion, defendant submitted a declaration in which he said he entered the United States in 1976 when he was six months old with his parents and siblings. He said he went to elementary school through high school in Southern California. He began dating a girl in middle school, and they had a son together in 1994. Defendant said he started working after high school and eventually became the owner of the business he worked for. He said he was arrested in September 2010 and hired an

3

attorney to represent him. Defendant alleged that he was never asked about his immigration status and pled guilty based on his attorney's advice. He said that, at the time of the plea, he had an established life in the United States and no connection to Mexico, and his son was 16 years old. Defendant alleged that he would have never pled guilty if he knew it could mean losing his family, that he would have wanted to go to trial, or if he had to plea, he would have been willing to do more jail time to avoid deportation.

Defendant also submitted a declaration from his plea counsel, who stated, "My notes do not reveal that I was aware that [defendant] is a lawful permanent resident who has lived in the United States since childhood." Counsel further stated, "My notes do not reflect that I tried to negotiate with the district attorney's office for an offense that carried less serious immigration consequences." He also stated, "At the time of this plea, my practice was to advise non-citizen clients that they should seek a consult with an immigration attorney to advise them of the specific consequences in their case."

The prosecution filed an opposition to defendant's motion and argued that defendant received the immigration advisal of potential consequences under section 1016.5. The prosecution further noted that since the commission of the current offenses, defendant had committed three violations of Vehicle Code section 23152 (driving under the influence (DUI)), the last of which he was convicted on or about 2015-2016. The prosecution also objected to the declarations submitted by defendant as hearsay and argued that they had not had the opportunity to cross-examine defendant or his counsel.

4

The court held a hearing on the motion on July 3, 2019. Defense counsel noted that he had submitted a copy of the plea form, which showed that defendant signed on both his own signature line, as well as on the plea counsel's signature line. He argued that this "suggests that even the plea form wasn't reviewed" by plea counsel. The prosecutor pointed out that the plea form specifically advised defendant that if he was not a citizen of the United States, the conviction may have the consequences of deportation, exclusion from the United States or denial of naturalization, and that defendant initialed and signed the plea form. After some discussion, the court asked if defendant had any convictions after 2011. The prosecutor stated he had three DUI's, and the last one was a felony.

After hearing argument from counsel, the court stated: "It seems to me that the standard is whether or not the defendant is aware of his immigration consequences. If the standard is we're going to evaluate what the discussions were with the attorney and the defendant and come up with some sort of criteria, and that is the litmus test, that would be very difficult to do. [¶] The question is whether or not the defendant was advised of his immigration consequences." It then noted that defendant signed the plea form with a paragraph indicating the potential immigration consequences. The court also observed that defendant's plea counsel requested a continuance, stating that defendant "ha[d] immigration issues to be resolved," and the matter was continued. It stated that the matter was specifically continued for the resolution of immigration issues and inferred "that would have been done through discussions with his client." The court concluded that "[t]here is a record showing that the defendant was advised of his immigration

5

consequences." The court added there may be an argument that the interests of justice would warrant granting relief. However, it noted that defendant had not stopped committing offenses after the instant convictions, including a felony DUI, which endangered the lives of others. It thus concluded that the interests of justice would not warrant granting relief. The court then denied the motion.

This appeal followed.

## DISCUSSION

### The Trial Court Erred in Denying Defendant's Motion

Defendant argues the court erred in denying the motion to vacate his convictions under section 1473.7. He claims his plea counsel rendered IAC by failing to advise him of the immigration consequences of the plea, failing to investigate the impact of the plea on his immigration status, and not trying to negotiate an immigration-friendly disposition. He claims that if he had been advised about the immigration consequences of his plea, he never would have pleaded guilty to an offense that made deportation mandatory. He further claims that the court advisement under section 1016.5 was insufficient and did not substitute for the required advice from counsel. Defendant also contends that even without considering whether counsel was ineffective, the evidence presented in support of his motion established his own error in that he did not meaningfully understand or knowingly accept the immigration consequences of his plea. Additionally, he claims the court abused its discretion in finding the interests of justice did not support granting the motion due to subsequent criminal conduct. We conclude that defendant established he did not meaningfully understand or knowingly accept the immigration consequences of

6

his guilty plea and would not have pleaded guilty if he did; thus, the court erred in denying his motion.

A. *Standard of Review*

We apply the independent standard of review to an order denying a motion to vacate a conviction under section 1473.7. (*People v. Vivar* (2021) 11 Cal.5th 510.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Id*. at p. 527.) In other words, we decide, based on our independent judgment, "whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

B. *Defendant Established He is Entitled to Relief*

Section 1473.7, which became effective on January 1, 2017, provides that a person who is no longer imprisoned may move to vacate a judgment if the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) A trial court must grant the motion if the defendant establishes by a preponderance of the evidence any ground for relief specified in section 1473.7, subdivision (a). (§ 1473.7, subd. (e)(1).) Section 1473.7 does not require a defendant to prove an IAC claim in order to obtain relief. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*).)

To establish a prejudicial error under section 1473.7, a person need only show by a preponderance of the evidence: (1) he did not " 'meaningfully understand' " or

" 'knowingly accept' " the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would not have pleaded guilty and would have risked going to trial if he had known the guilty plea would have mandatory and adverse immigration consequences. (*Mejia*, *supra*, 36 Cal.App.5th at p. 871.) In other words, prejudicial error may be the moving party's *own* mistake of law or inability to understand the potential adverse immigration consequences of the plea. (*Ibid.*; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).) The focus of the inquiry is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*Mejia*, at p. 866.)

In *Mejia*, *supra*, 36 Cal.App.5th 859, the defendant was charged in 1993 with three felony counts related to possession for sale of cocaine or cocaine base. (*Id*. at p. 862.) He pled guilty and initialed an immigration advisement on the plea form stating he understood that if he was not a United States citizen the conviction " '*may* have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' " (*Id.* at p. 863.)

In 2017, the defendant brought a motion pursuant to section 1473.7 to have his convictions vacated. (*Mejia*, *supra*, 36 Cal.App.5th at p. 863.) He submitted a declaration in which he stated his former attorney (by that time deceased) had told him he had no choice but to take the plea deal, never asked about his immigration status or explained that pleading guilty would lead to deportation, and told him to sign all the boxes on the plea form. (*Ibid.*) The defendant declared that he would have fought the charges or tried to negotiate an immigration-neutral plea if he had known that pleading

guilty to the charges would lead to deportation. (*Id.* at pp. 863-864.) An evidentiary hearing was conducted at which the defendant testified that his prior attorney did not discuss the possible immigration consequences of his plea and that he would not have accepted the negotiated plea and pleaded guilty if he had known it would harm him in the future. (*Id.* at pp. 864-865.) The trial court denied the motion, treating the defendant's claim as one based on IAC and concluding that the defendant " 'failed to make a sufficient showing that he would have declined the plea and risked going to trial had he been *more fully apprised* of its immigration consequences.' " (*Id.* at p. 865.)

The Court of Appeal reversed, agreeing with the defendant that the "key" to section 1473.7 is not what the defense attorney said or did not say about the immigration consequences of the plea, but is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*Mejia*, *supra*, 36 Cal.App.5th at p. 866.) The court concluded that the defendant's undisputed testimony at the evidentiary hearing established he did not meaningfully understand or knowingly accept the immigration consequences of his guilty plea and would not have pleaded guilty if he did. (*Id*. at p. 872.) The court stated, "[the defendant] plainly established his own 'error' within the meaning of section 1473.7, subdivision (a)." (*Ibid.*)

As to prejudice, the *Mejia* court concluded there was contemporaneous evidence to substantiate the defendant's claim he would not have accepted the plea agreement if he had known the immigration consequences of pleading guilty. (*Mejia*, *supra*, 36 Cal.App.5th at p. 872.) This contemporaneous evidence included the defendant's own life story (he had been living in the United States for eight years, since he was 14 years

9

old; at the time of the guilty plea, he had a wife and an infant son, as well as his mother and siblings, here; he had no remaining family ties in Mexico), and the preliminary hearing transcript, which left uncertainties as to the strength of the prosecution's evidence.  The court also noted that, given the circumstances that the defendant had no criminal history and his guilty plea was a plea to the court, it was likely that even after trial, the court would have sentenced him to probation with local time in custody, or a lower prison term.  (*Id.* at pp. 872-873.)

Having found the trial court erred by denying the section 1473.7 motion, the *Mejia* court concluded the appropriate remedy was to reverse the order denying the motion, with directions to the trial court to grant the motion and allow the defendant to withdraw his guilty pleas.  (*Mejia*, *supra*, 36 Cal.App.5th at p. 862.)

1.  *Defendant Showed He Did Not Meaningfully Understand or Knowingly Accept the Adverse Immigration Consequences of His Plea*

Turning to the facts of this case, we find the record demonstrates defendant did not *meaningfully understand* or *knowingly accept* the immigration consequences of his guilty plea.  In support of his section 1473.7 motion, he submitted a declaration stating that he was arrested in September 2010 and hired an attorney to represent him.  He said he pled guilty based on his attorney's advice and that his attorney told him that the district attorney's offer "was the best deal he could get [him]."  Defendant stated that he was never asked about his immigration status or advised about the consequences the plea deal would have to his immigration status.  He said he "did not feel like [he] had a choice but

10

to sign." We note that, in ruling on the motion, the trial court did not find defendant's declaration not credible.

Our conclusion that defendant accepted the plea deal without a *meaningful understanding* of its immigration consequences is bolstered by our determination that defendant's counsel did not advise him of the specific immigration consequences of his plea. In *Padilla v. Kentucky* (2010) 559 U.S. 356, the United States Supreme Court held that criminal defense attorneys have an affirmative duty to advise their clients of the potential deportation consequences of any plea. (*Id.* at p. 374 ["[C]ounsel must inform her client whether his plea carries a risk of deportation."].) The court acknowledged that immigration law can be complex and that "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." (*Id.* at p. 369, fn. omitted.) "But when . . . federal immigration law specifies in 'succinct, clear, and explicit' terms that a criminal conviction will result in deportability . . . a criminal defense attorney must accurately advise his or her client of that consequence before the client enters a guilty plea." (*People v. Patterson* (2017) 2 Cal.5th 885, 898, citing *Padilla v. Kentucky*, at pp. 368-369.)

Here, the parties agree that defendant's plea would subject him to mandatory deportation since he pled guilty to aggravated felonies.[2] Defendant claims his counsel

---

[2] We note that subsequent to his plea, the court granted defendant's motion to reduce count 1 (Health & Saf. Code, § 11359) to a misdemeanor. Nonetheless, count 4 remained an aggravated felony.

11

failed to inform him of any immigration consequences of his plea and failed to investigate the impact of the plea on his immigration status. Defendant offers his declaration as well as the declaration of his plea counsel to support his claim. We recognize the ease with which a defendant may claim his counsel erred. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 938.) Moreover, we also note that "[a]n allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.) Defendant's claims require "corroboration and objective evidence because a declaration by defendant is suspect by itself." (*Id.* at p. 224.) In other words, "courts should not disturb a plea merely because of subsequent assertions by a defendant claiming his lawyer was deficient. The reviewing court should also assess additional contemporaneous evidence." (*Ibid.*)

Defendant has presented such corroborating evidence in this case. In support of his motion, defendant attached other exhibits aside from his own declaration, including a declaration from his plea counsel, a declaration from an immigration specialist with whom the attorney who filed the section 1473.7 motion consulted, a copy of the bench warrant for defendant's arrest by the United States Department of Homeland Security, a copy of his felony plea form, a copy of his son's birth certificate, documents concerning his business license, and character references.

Defendant claims his plea counsel's declaration establishes that counsel did not advise him of the immigration consequences of his plea or investigate the issue. Defendant's plea counsel's declaration indicates that "[his] notes do not reveal that [he]

12

was aware that [defendant was] a lawful permanent resident" or that he tried to negotiate with the prosecutor for an offense with less serious immigration consequences. The declaration also states that "[his] practice was to advise non-citizen clients that they should seek a consult with an immigration attorney to advise them of the specific consequences in their case." Nowhere in the declaration does defense counsel state that he advised defendant that his criminal conviction will result in mandatory deportation as required by *Padilla* where, as here, the immigration consequences are succinct, clear and explicit. (*People v. Patterson*, *supra*, 2 Cal.5th 885, 898). Nor does it state that it was his practice to do so in such cases. We may infer from counsel's declaration that he did not advise defendant of the specific immigration consequences of his plea in this case. Certainly, the record shows, at minimum, that he did not have any recollection of doing so. Nor does counsel state that it was his custom and practice to do so. We note the plea was taken after the filing of the *Padilla* decision. Without such information, defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of his plea of guilty was significantly damaged.

The Attorney General contends the prosecutor objected to the declarations submitted on hearsay grounds in his written opposition to defendant's motion. However, we note that the prosecutor raised no objection and made no request to cross-examine any witnesses at the hearing on the motion. In any event, defendants routinely submit, and courts consider, declarations in support of section 1473.7 motions. (E.g., *People v. Vivar*, *supra*, 11 Cal.5th at pp. 527-528; *People v. Jung* (2020) 59 Cal.App.5th 842, 846,

13

overruled in part on other grounds in *Vivar*, at p. 526, fn. 4; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78-79.)  Further, the declarations here did not contain hearsay, which is defined in Evidence Code section 1200 as statements made by someone other than the witness testifying, and that are offered to prove the truth of the matter stated.  "The hearsay rule is not implicated where the issue is whether certain things were said or done, and not whether those things were true or false.  In such event, the out-of-court statement or conduct has independent legal significance (whether or not the content is true and despite the declarant's credibility) and is admissible nonhearsay to prove the words were spoken or the act was done.  [Citations.]"  (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2011) ¶ 8:1042, p. 8D-10, italics omitted.)  Here, the declaration of defendant's plea counsel was admissible since it had independent legal significance, that is, it was offered as circumstantial evidence that counsel did not advise defendant of the specific immigration consequences of his plea or investigate the issue.

The Attorney General also argues defendant failed to establish any error within the meaning of section 1473.7, asserting that "the law was and is clear that [his] plea would subject him to mandatory removal" and that the court properly found he was advised of the immigration consequences.  However, these assertions do not address or dispute that defendant did not meaningfully understand or knowingly accept the immigration consequences of his guilty plea.

14

2. *Defendant Established a Reasonable Probability That He Would Not Have Pleaded Guilty If He Had Known That His Guilty Plea Would Subject Him to Mandatory Deportation*

Defendant provided contemporaneous evidence to substantiate his claim that he would not have accepted the plea agreement if he had known it would result in deportation. In his declaration, defendant said he entered the United States with his parents and siblings when he was six months old. He went to elementary school through high school in Southern California. He and a girl he was dating had a son together in 1994. Defendant said he started working at Custom Fireplace Creations after high school and eventually became the owner of the business.[3] He also said that, at the time of the plea, he had no connection to Mexico, and his son was 16 years old. Defendant alleged that he would have never pleaded guilty if he knew it could mean losing his family and being sent to a country where he had no connection. Remaining in the United States was extremely important to him since his entire family is here, he had lived here for more than 40 years, and he had worked hard and had an established life here. Additionally, in this case, defendant pled guilty to possession for sale of marijuana (Health and Saf. Code, § 11359) and possession of a firearm by a felon (Pen. Code, former § 12021). The charges that were dismissed included cultivation of marijuana (Health and Saf. Code, § 11358), possession of a controlled substance (Health and Saf. Code, § 11350), and

---

[3] In support of his motion, defendant attached a copy of his son's birth certificate and a business license tax notice, which reflected he was the owner of Custom Fireplace Creations.

15

possession of ammunition by a felon (Pen. Code, former § 12316).  Each of these charges constituted 16-month, two-year, or three-year offenses under Penal Code section 1170. They were not the type of offenses that would have subjected defendant to a lengthy prison sentence had he declined the negotiated disposition and been convicted by a jury. This evidence supports a finding that there was a *reasonable probability* that defendant would not have pleaded guilty had he known the guilty plea would result in mandatory and dire immigration consequences.  (*Mejia*, *supra*, 36 Cal.App.5th at p. 871.)

The Attorney General argues that defendant failed to establish he would not have pleaded guilty since:  (1) defendant has not established there was an immigration-safe disposition available to him; (2) defendant did not establish "a colorable defense to the charges"; (3) the disparity between the potential sentence of the charged offenses and the sentence offered in the plea agreement was "no doubt a factor that motivated [defendant] in pleading"; and (4) defendant's prior forgery conviction established he was "sophisticated and familiar with the criminal justice system and, therefore, more likely to understand the consequences of pleading guilty."  However, similar to *Mejia* and *Camacho*, defendant presented evidence he was brought to the United States when he was six months old and had lived here ever since.  His entire family, including his son, live here, and he has no connection to Mexico; thus, he would have taken his chances going to trial (even if only to figuratively throw a " 'Hail Mary' ") if he knew the convictions would lead to deportation.  (See *Mejia*, *supra*, 36 Cal.App.5th at pp. 870-873; see also *Camacho*, *supra*, 32 Cal.App.5th at pp. 1011-1012.)

16

We conclude defendant satisfied the test for prejudicial error set forth in *Mejia*, *supra*, 36 Cal.App.5th at p. 862. He showed by a preponderance of the evidence that he did not "meaningfully understand" he would be deported as a result of his guilty plea, and that he would not have pleaded guilty had he known of that consequence. Consequently, the trial court erred in denying his motion to vacate the convictions as invalid due to prejudicial error. (§ 1473.7, subd. (e).) The appropriate remedy is to direct the trial court to grant the motion. (*Mejia*, *supra*, 36 Cal.App.5th at p. 873; *Camacho*, *supra*, 32 Cal.App.5th at pp. 1011-1012.)[4]

## DISPOSITION

The order denying the section 1473.7 motion to vacate the convictions is reversed, and the matter is remanded with directions to the trial court to enter a new order granting the motion and to allow defendant to withdraw his guilty plea.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                    J.

We concur:

McKINSTER _____
            Acting P. J.

MILLER _____
            J.

---

[4] Having concluded that defendant is entitled to relief, we need not address his claim of ineffective assistance of counsel.

17